Filed 12/22/15  P. v. Garner CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041132 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS122041) |
| v. | |
| JARVIS GARNER, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

Defendant Jarvis Garner appeals after a jury found him guilty of two counts of possessing a weapon in prison.  (Pen. Code, § 4502, subd (a); counts 1 & 2.)[1]  Defendant admitted allegations that he had suffered four prior convictions that qualified as strikes.  (§ 1170.12.)  As to count 1, the trial court dismissed three of the four strike allegations pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), but as to count 2, the trial court declined to dismiss any of the strikes.  The trial court sentenced defendant to a six-year prison term for count 1 and a consecutive prison term of 25 years to life for count 2, with both terms ordered to run consecutively to a 50-year term that defendant was serving in a prior case.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

On appeal, defendant contends the trial court abused its discretion by denying his *Romero* motion and that the denial of his *Romero* motion violated the Eighth Amendment's prohibition against cruel and unusual punishment. Defendant also requests this court review the confidential proceedings held after the trial court granted his *Pitchess* motion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

We conclude the trial court did not abuse its discretion by denying defendant's *Romero* motion and that the denial of that motion did not violate defendant's rights under the Eighth Amendment. However, we will reverse the judgment and remand for a further hearing on defendant's *Pitchess* motion, because the record is insufficient for us to determine whether the trial court properly exercised its discretion in making its discovery rulings. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1231 (*Mooc*).)

## II. BACKGROUND

### A. The Current Offenses

On January 29, 2012, Correctional Officer Arthur Puente was working at the Salinas Valley State Prison, where defendant was an inmate. Officer Puente searched defendant in the presence of two other officers. Officer Puente felt a hard object around defendant's inner thigh. The object was tied to the drawstring of defendant's sweatpants. Officer Puente retrieved the object and discovered that it was an inmate-manufactured weapon. Clear plastic pen tubes had been melted together to form a tip, which had been sharpened to a point. The weapon could be used to stab someone and was similar to weapons other inmates had used as stabbing weapons and which had caused serious injuries.

On January 12, 2013, Correctional Officer Jose Molina conducted a search of defendant, using a hand-held metal detector, in the presence of one other officer. After the detector alerted on defendant's shoe, Officer Molina removed the shoe and found

2

another plastic inmate-manufactured weapon, which was similar to the weapon found on defendant during the January 29, 2012 search.

### B.     The Strike Offenses/Criminal History

On November 18, 2001, defendant was 14 years old. He and an 18-year-old companion approached the two victims, a male and a female who were on a date. Defendant or his companion pointed a gun at the victims and said he wanted their wallets and the keys to their car. Defendant and his companion then took the female victim, drove off in the car, and later took turns raping her.

Defendant was tried as an adult, and in 2002 he pleaded guilty to four offenses: carjacking (§ 215, subd. (a)), forcible rape in concert (§ 264.1), forcible oral copulation in concert (§ 288a, subd. (d)), and forcible sodomy in concert (§ 286, subd. (d)). Defendant also admitted that he personally used a firearm in the commission of the carjacking (§ 12022.53, subd. (b)) and that he used a firearm or deadly weapon in the commission of the forcible rape in concert (§ 12022.3, subd. (a)). Defendant was sentenced to a 50-year prison term.

Defendant's criminal history began prior to his commission of the strike offenses. In 1996, he was adjudged a ward of the juvenile court for felony animal cruelty. Also in 1996, he committed grand theft from a person three times; each time he was found in violation of his probation in the animal cruelty case. In 1999, he was arrested for vandalism, but the petition was dismissed.

According to the probation report prepared in 2002, defendant was in ninth grade at the time of his arrest for the strike offenses, and he continued taking classes while in juvenile hall. Defendant had previously mowed lawns for income. He reporting consuming alcohol about twice a week and smoking marijuana about 20 times. Defendant indicated he was not abused as a child and that his family did not have a history of criminality or drug abuse. Defendant was not a member of a criminal street

3

gang. Defendant had been diagnosed with Psychotic Disorder, Paranoid Schizophrenia, Conduct Disorder, and Attention Deficit Hyperactivity Disorder.

### C. Procedural Background – Count 1

In an information filed on January 15, 2013, defendant was charged with possession of a weapon by a prisoner (§ 4502, subd. (a)) on January 20, 2012. The information alleged four prior strikes. Defendant pleaded not guilty and denied the strike allegations.

Defendant filed a *Romero* motion on February 28, 2013. Defendant requested the trial court dismiss his prior convictions in the interests of justice, arguing that the prior convictions were remote in time (i.e., over 10 years old), that his current crime was not a violent or serious felony, that his record showed that his criminal conduct was decreasing in severity, that he had been taking steps to address his drug use, that his current offense was relatively minor compared to his strike offenses, that he had been only 14 years old at the time of the strike offenses, that he had prospects for a stable life, that his strikes all occurred on one occasion, and that he was already serving a lengthy sentence.

Defendant's trial counsel submitted a declaration in support of the *Romero* motion, in which he alleged that defendant's mother was addicted to drugs when defendant was a child and that defendant had been forced to participate in burglaries with his mother. The declaration further alleged that defendant had essentially been raised by his older siblings, that he had been sexually abused by a friend of his mother's, that he had been placed in special education, and that he had been under the influence of marijuana and alcohol at the time of the strike offenses. Additionally, the declaration alleged that defendant had not participated in the rape. The declaration acknowledged that defendant had received "write-ups" for fighting and disobedience while in the California Youth Authority (CYA) but alleged that defendant had initiated only two of the fights. The declaration stated that defendant had participated in vocational, academic, anger management, and substance abuse classes while incarcerated.

4

The trial court granted defendant's *Romero* motion as to three of the four strike allegations on April 17, 2013. The trial court found that the incident leading to defendant's prior convictions was "incredibly serious, incredibly violent, [and] incredibly life-altering" for the victims. However, the trial court found the strikes all arose out of one "single horrible evening." Further, defendant was "very young at the time of the offense and had a very, very difficult upbringing with the lack of any appropriate role models." Additionally, defendant had taken advantage of educational opportunities in prison, although he had also been "violent in prison." The trial court did not believe that defendant had yet accepted "full responsibility for his conduct." Ultimately, the trial court based its decision on "the single occurrence" and defendant's "age at the time of the offense[s]."

### D.    Procedural Background – Count 2

In an information filed on July 19, 2013, the District Attorney charged defendant with possession of a weapon by a prisoner (§ 4502, subd. (a)) on January 12, 2013. The information alleged the four prior strikes. Defendant pleaded not guilty and denied the strike allegations.

On August 28, 2013, the trial court granted the District Attorney's motion to consolidate the two informations. Defendant subsequently filed a second *Romero* motion, in which he requested he trial court dismiss the strikes as to the new charge of weapon possession by a prisoner. Defendant's second *Romero* motion contained the identical arguments and declaration as his first *Romero* motion.

A consolidated information was filed on November 18, 2013. The January 29, 2012 possession of a weapon by a prisoner was designated as count 1, and the January 12, 2013 possession of a weapon by a prisoner was designated as count 2. As to count 1, the consolidated information alleged one strike (i.e., the strike that was not dismissed pursuant to the first *Romero* motion) and as to count 2, the consolidated information alleged all four strikes.

5

The trial court held a hearing on defendant's second *Romero* motion on October 9, 2013. The trial court denied the motion, finding that the prior incident leading to the strikes was "a very serious, very violent prior criminal act." The trial court also found that the new charge involved "serious potential violence." The trial court cited the "facts and circumstances" of both the present and prior cases as well as defendant's "prospect to lead a law abiding life" as factors in its determination that defendant was "outside the spirit of the Three Strikes Law."

Defendant admitted the strike allegations on November 18, 2013, the first day of jury trial. The jury began hearing evidence on November 20, 2013 and returned guilty verdicts on both counts on November 26, 2013.

At the sentencing hearing held on June 4, 2014, the trial court imposed the three-year midterm for count 1 and doubled it to six years pursuant to section 1170.12, subdivision (c)(1). The trial court imposed a consecutive term of 25 years to life for count 2 and ordered that the terms for counts 1 and 2 run consecutively to the 50-year sentence defendant was already serving.

### III. DISCUSSION

#### A. *Romero Motion*

Defendant contends the trial court abused its discretion by denying his second *Romero* motion, concerning count 2. As we shall explain, we find no error.

##### 1. Applicable Law

In *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony*), the California Supreme Court set forth the basic principles applicable to a trial court's decision to strike a prior conviction. " 'In *Romero,* we held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).' [Citation.] We further held that '[a] court's discretionary

6

decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion. [Citation.]" (*Id*. at p. 373.)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at pp. 376-377.)

" '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he [or she] actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.) " '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in

7

part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies.'  [Citation.]"  (*Ibid.*)

### 2.    Analysis

Defendant contends that the trial court's denial of his *Romero* motion was arbitrary and irrational, for four reasons.

First, defendant contends that due to his age at the time of the strike offenses (14 years old), he was outside the spirit of the Three Strikes law.  Defendant also points out that he was 24 and 25 years old at the time of his weapon possession offenses.

Defendant relies on a number of United States Supreme Court cases concerning juvenile sentencing, including *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455] (*Miller*), which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " (*Id.* at __ [132 S.Ct. 2455, 2460].)  In *Miller,* the Court explained that its prior cases had "establish[ed] that children are constitutionally different from adults for purposes of sentencing." (*Id.* at __ [132 S.Ct. 2455, 2464]; see also *Roper v. Simmons* (2005) 543 U.S. 551 [invalidating death penalty for juvenile offenders]; *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) [life without parole sentences for non-homicide juvenile offenders violate the Eighth Amendment].)  Specifically, "juveniles have diminished culpability and greater prospects for reform," making them " 'less deserving of the most severe punishments.' " (*Miller, supra,* at __ [132 S.Ct. 2455, 2464].)

In the present case, we are not considering the punishment imposed for the offenses defendant committed as a juvenile, but rather the punishment imposed for an offense defendant committed at age 25.  Thus, the United States Supreme Court cases defendant relies on do not apply.  In determining whether to apply the Three Strikes law as to defendant's current offense, the relevant factors were the nature and circumstances of that offense, the nature and circumstances of defendant's prior serious and/or violent

8

felony convictions, and the particulars of defendant's background, character, and prospects. (*Carmony, supra,* 33 Cal.4th at p. 377.) Defendant's prior offenses were, as the trial court recognized, extremely violent and serious, and his current offense— possession of a weapon by a prisoner—involved the potential for further violence. Defendant had also committed the same offense just one year earlier. This evidence showed that defendant "did not add maturity to age." (*People v. Williams* (1998) 17 Cal.4th 148, 163.) Thus, the trial court did not abuse its discretion by declining to dismiss the strike allegations based on defendant's age at the time of the strike offenses.

Second, defendant contends that because he was already serving a sentence of 50 years to life, the imposition of a new, consecutive Three Strikes sentence resulted in the loss of any opportunity for early release on parole.

Defendant discusses section 3051, which, inter alia, requires the Board of Parole Hearings to conduct parole hearings for defendants who were under the age of 18 at the time of their controlling offenses. The purpose of section 3051 was "to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity." (Sen. Bill No. 260 (2013-2014 Reg. Sess.) ch. 312, § 1.) The timing of the parole hearings depends on the sentence imposed for the "controlling offense," which is "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).) For a defendant who was sentenced to a "determinate sentence," the parole hearing is held during the 15th year of incarceration. (*Id.*, subd. (b)(1).) For a defendant who was sentenced to a life term of less than 25 years to life, the parole hearing is held during the 20th year of incarceration. (*Id.*, subd. (b)(2).) For a defendant who was sentenced to a term of 25 years to life, the parole hearing is held during the 25th year of incarceration. (*Id.*, subd. (b)(3).)

As defendant points out, section 3051 does not apply to a defendant who has been sentenced under the Three Strikes law. (§ 3051, subd. (h).) Defendant asserts that he would have been eligible for a youth offender parole date had the trial court imposed a two-strike sentence of six years rather than the sentence of 25 years to life that he received after the trial court denied his *Romero* motion in its entirety, because the sentence he received for one of the strike offenses would still be his "controlling offense." (§ 3051, subd. (a)(2)(B).)[2] In essence, defendant contends that the trial court should have considered the sentence he was already serving for the strikes in deciding whether to grant the *Romero* motion.

A defendant's sentence is "a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (*People v. Garcia* (1999) 20 Cal.4th 490, 500 (*Garcia*).) Moreover, the fact that the defendant is already serving a lengthy prison term is relevant to the defendant's prospects for committing future crimes. (*Ibid.*) Although a sentence of 25 years to life would add a significant amount of time to defendant's current sentence and render defendant ineligible for a youth offender parole hearing under section 3051, it was not an abuse of discretion to impose that sentence for the current offense under the circumstances here. Most significantly, defendant's commission of a second weapon possession offense just one year after his prior weapon possession showed that he remained a serious danger to society and that his prospects for rehabilitation were not good. In partially granting defendant's *Romero* motion as to the first weapons possession

---

[2] Section 3051, subdivision (h) states: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12[ or] subdivisions (b) to (i), inclusive, of Section 667." We need not decide whether defendant would have been entitled to a youth offender parole hearing had the trial court imposed a two-strike sentence as to count 2 in the present case.

10

offense, the trial court was persuaded by the fact that the strikes had occurred on one occasion, when defendant was young. After hearing the evidence of the second weapon possession offense, the trial court reasonably determined that defendant's youth at the time of the strikes was not as significant as his repeated commission of offenses involving the potential for serious violence. The evidence of defendant's commission of the two prison offenses supported a finding that defendant's prospects for committing future offenses was not diminished by the fact that he was already serving a lengthy prison sentence. (Cf. *Garcia, supra,* at p. 500.)

Third, defendant contends that he had no prior opportunity to demonstrate he had reformed because his prior strikes were committed on one occasion. He cites *People v. Vargas* (2014) 59 Cal.4th 635 for the proposition that "[t]he typical third strike situation thus involves a criminal offender who commits a qualifying felony after having been afforded two previous chances to reform his or her antisocial behavior." (*Id.* at p. 638.) Defendant acknowledges, however, that the sentencing court may impose a third strike sentence under circumstances where, as here, the defendant's "two previous qualifying felony convictions were for crimes so closely connected in their commission that they were tried in the same proceeding, . . . because the Three Strikes law does not require that prior convictions, to qualify as strikes, be brought and tried separately. [Citation.]" (*Ibid.*)

The trial court here properly considered the fact that defendant's prior strikes arose from multiple criminal acts committed during a single course of conduct. (See *People v. Benson* (1998) 18 Cal.4th 24, 36.) Under the circumstances, the trial court did not abuse its discretion by declining to dismiss any of the strike allegations on this basis. Defendant's prior strike offenses were committed against multiple victims, and as the trial court recognized, they were "incredibly serious, incredibly violent, [and] incredibly life-altering." Defendant subsequently committed two weapon possession offenses that involved the potential for similar violence. Defendant had an opportunity to demonstrate

11

that he had reformed in the time since the strike offenses, but instead he demonstrated that he remained dangerous.

Fourth, defendant contends there were no material changes in circumstances between the first and second *Romero* motions. We disagree. The evidence of defendant's commission of a second weapon possession offense was a material change in circumstances, because it demonstrated defendant continued to pose a serious danger to society.

In light of the nature and circumstances of the offense, the nature and circumstances of defendant's prior serious and/or violent felony convictions, and the particulars of defendant's background, character, and prospects, the trial court did not abuse its discretion by denying defendant's *Romero* motion as to count 2. (*Carmony, supra,* 33 Cal.4th at p. 377.)

## B.    *Cruel and Unusual Punishment*

Defendant contends the denial of his *Romero* motion resulted in a sentence that violates the cruel and unusual punishment prohibition of the Eighth Amendment. Specifically, defendant claims "the record does not show that the trial court considered how children are different and how those differences counseled against foreclosing a meaningful opportunity for [him] to obtain release based on demonstrated maturity and rehabilitation." Defendant relies on *Graham, supra,* 560 U.S. 48. However, *Graham* involved sentencing for an offense committed when the defendant was a juvenile, and the present offense involves sentencing for an offense defendant committed when he was an adult. Thus, *Graham* does not apply in this matter.

## C.    *Pitchess Motion*

Defendant requests this court review the documents that the trial court reviewed during the in camera hearing held after the trial court granted his *Pitchess* motion, and determine whether the court incorrectly withheld any documents.

12

### 1. Proceedings Below

Defendant filed a *Pitchess* motion on February 28, 2013. Defendant sought discovery regarding all of the correctional officers who participated in the two searches. In particular, defendant requested "instances of errors or falsifications in reports regarding alleged inmate misconduct or suspect activity, instances of dishonesty, deception, or falsehood, and instances of fabrication of evidence or evidence tampering relating to inmates, including claims of peace officer misconduct against inmates or fellow staff/officers at Salinas Valley State Prison." Defendant specifically alleged that Officer Puente falsified his report of finding a weapon on defendant's person.

The trial court held a hearing on defendant's *Pitchess* motion on May 29, 2013. The trial court found good cause to conduct an in camera hearing as to Officer Puente only, concerning falsification of reports, dishonesty, deception, falsehood, fabrication of evidence, and "anything that goes to credibility."[3]

During the ensuing in camera hearing, two custodians of records for Salinas Valley State Prison testified. A correctional officer can have a number of different employee files: an Equal Employment Opportunity file, an employee relations office file, a supervisory file, an appeals file, an investigative services unit file, and a personnel file. The custodians of records had obtained all of the records in each of Officer Puente's files, although there were no records in his Equal Employment Opportunity file, employee relations office file, or investigative services unit file. The trial court examined the records in the remaining files and ordered disclosure of two files from the appeals file. The trial court found "nothing of relevance" in Officer Puente's supervisory file. The trial court went through each section of Officer Puente's personnel file (general

---

[3] Defendant does not challenge the trial court's ruling that good cause existed as to Officer Puente only.

13

information, employee benefits, pay history, employee performance, employment history, and "miscellaneous"), but found "nothing of relevance" in each section.

### 2. Analysis

The *Pitchess* discovery procedure has two steps. First, the party seeking discovery must file a written motion describing the type of records sought, supported by "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(3); *Mooc, supra,* 26 Cal.4th at p. 1226.) Second, if the superior court finds good cause for discovery of personnel records, the court conducts an in camera review of the pertinent documents to determine which, if any, are relevant to the case, typically disclosing only identifying information concerning those who filed complaints against the officers. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.) "The trial court may not disclose complaints more than five years old, the 'conclusions of any officer' who investigates a citizen complaint of police misconduct, or facts 'so remote as to make [their] disclosure of little or no practical benefit.' [Citations.]" (*Ibid*.) Even upon a showing of good cause, the defendant is only entitled to information that the court, after the in camera review, concludes is relevant to the case. (*People v. Johnson* (2004) 118 Cal.App.4th 292, 300.)

When the superior court conducts the in camera review, it must make a record that will permit future appellate review. (*Mooc, supra,* 26 Cal.4th at pp. 1229-1230; *People v. Guevara* (2007) 148 Cal.App.4th 62, 69.) The court may do so by either copying the documents and placing them in a confidential file, preparing a sealed list of the documents it reviewed, or "simply state for the record what documents it examined" and seal that transcript. (*Mooc, supra,* at p. 1229.)

14

The trial court's determination of whether confidential personnel records are discoverable is subject to review for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) If there is any uncertainty in the record as to which documents were reviewed by the trial court, this court may remand the matter to the trial court with directions to conduct a hearing and clarify the materials it reviewed in camera before it denied the *Pitchess* motion. (*Mooc, supra,* 26 Cal.4th at p. 1231.)

In this case, the trial court did not copy the documents that were in any of Officer Puente's files. The trial court also did not prepare a sealed list of the documents it reviewed, nor did the court "state for the record" what documents it examined. (*Mooc, supra,* 26 Cal.4th at p. 1229.) As to the appeals file, the trial court examined the records and ordered disclosure of two files, but the court did not indicate whether there were any other documents in that file and if so, what they were. The trial court found "nothing of relevance" in Officer Puente's supervisory file and "nothing of relevance" in each section of Officer Puente's personnel file. However, the trial court did not indicate what documents it reviewed in those files. Thus, in this case, the record is insufficient for full appellate review. Consequently, we will reverse the judgment in order for the trial court to conduct a further in camera examination of all the "potentially relevant" documents it reviewed in Officer Puente's appeal file, supervisory file, and personnel file pursuant to defendant's *Pitchess* request for discovery, and to make an adequate record for appellate review. (See *Mooc, supra,* 26 Cal.4th at pp. 1226, 1228-1229, 1231.) During the further in camera hearing, the trial court shall "make a record of what documents it examined" and either obtain a copy of the documents and place the copies in a confidential file or "prepare a list of the documents it considered, or simply state for the record what documents it examined." (*Id.* at p. 1229.)

15

## IV.    DISPOSITION

The judgment is reversed and the matter is remanded for the purpose of holding a further in camera hearing on defendant's *Pitchess* motion in accordance with the principles and procedures described in *People v. Mooc* (2001) 26 Cal.4th 1216.

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:



_____
ELIA, ACTING P.J.




_____
MIHARA, J.